**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CIVIL ACTION NO. 20-89-DLB-EBA**

**TECH COM, LLC**                                                                   **PLAINTIFF**

**v.**                   **MEMORANDUM OPINION AND ORDER**

**JIMMIE ESTEP, et al.**                                            **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \*

**I.    INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment (Docs. # 27 and 27-1), which has been fully briefed (Docs. # 32 and 35) and is thus ripe for the Court's review. For the reasons stated herein, Defendants' Motion is **granted**.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

At the heart of this matter is a dispute between an employee and his former employer. Plaintiff Tech Com is a limited liability company based in Kentucky that employed Defendant Jimmie Estep from January 2, 2018 until September 28, 2019. (Doc. # 1-1 ¶¶ 1, 4). Estep was Tech Com's Director of Operations; he was tasked with several duties, including client relations and business development. (*Id.* ¶ 21). As such, Estep was provided with access to Tech Com's customer information, pricing information, pricing tools, and company plans, among other data. (*Id.* ¶ 22). Tech Com also provided Estep with an electronic device—an Apple iPad—that contained most of this information. (*Id.* ¶¶ 24-25). The proprietary information and pricing tools on Estep's iPad included Tech Com's Project Weekly Report ("PWR"), which is an Excel workbook preloaded with

1

formulas for calculating work-related figures.  (Docs. # 32 at 3-4 and 32-2 at 1).  The PWR also contained, the Firm Price Quote tool ("FPQ"), which uses simple and complex mathematical formulas to derive work-related figures.  (Doc. # 32 at 4-5 and 32-2 at 2).

Eventually, Estep began working for a company he formed with his wife: E-3 Technical Solutions, LLC ("E-3"), while still employed by Tech Com.  (*Id.* ¶¶ 28, 34-35).  Tech Com alleges that Defendants Estep and E-3 began contacting customers of Tech Com and utilizing Tech Com's proprietary information and trade secrets for their own benefit, explicitly to solicit customers.  (*Id.*).  Several emails received by Estep's Tech Com account allegedly show that he was soliciting current customers for his new business.  (*Id.* ¶¶ 39-41).  Tech Com further alleges that some emails demonstrated that E-3 was using Tech Com's confidential and proprietary bidding software to submit price quotes.  (*Id.* ¶ 43).

Tech Com asserts ten (10) causes of action against Defendants.  (*Id.* ¶¶ 60-131).  Count I seeks injunctive relief (*Id.* ¶ 61); Count II alleges Estep breached his fiduciary duty and duty of loyalty to Tech Com (*Id.* ¶ 71); Count III contends that Defendants have misappropriated Tech Com's trade secret information (*Id.* ¶ 79); Count IV asserts that Defendants have engaged unfair competition by using Tech Com's confidential and proprietary information (*Id.* ¶ 90); Count V alleges that Defendants have intentionally interfered and continue to interfere with Tech Com's business relationships with its customers by using its confidential and proprietary information (*Id.* ¶ 101); Count VI alleges that Defendants have intentionally and without authorization exercised dominion and control over Tech Com's confidential trade secrets (*Id.* ¶ 109); Count VII alleges that Estep converted Tech Com's iPad, which contained its confidential and proprietary

information (*Id.* ¶¶ 114-116); and Count VIII alleges Defendants have been unjustly enriched as a result of their actions (*Id.* ¶¶ 119-121). Count IX and X allege Estep misappropriated the identity of Tech Com's President for the benefit of Defendants (*Id.* ¶¶ 124-125) and seeks punitive damages (*Id.* ¶ 130), but these claims are not within the scope of Defendants' motion as they only seek summary judgment on Counts I-VIII. (Doc. # 27-1 at 3).

### III.     ANALYSIS

#### A.     Standard of Review

A motion for summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, no genuine dispute exists where *no* reasonable jury could return a verdict for the nonmoving party. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998). The moving party bears the burden of showing the absence of a genuine issue of material fact. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). Lastly, the Court must draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

#### B.     Kentucky Uniform Trade Secrets Act Applicability

In 1990, Kentucky passed the Kentucky Uniform Trade Secrets Act ("KUTSA"), KRS § 365.880, *et seq.*, to establish a statutory scheme governing the definition, protection, and penalties for misappropriation of trade secrets. *Auto Channel, Inc. v.*

3

*Speedvision Network, LLC*, 144 F.Supp.2d 784, 788 (W.D. Ky. 2001) (citations omitted). As part of the statutory scheme, KUTSA replaces all conflicting civil state law regarding misappropriation of trade secrets, except in limited circumstances, such as contractual remedies, civil remedies not based upon misappropriation of a trade secret or even tort claims such as fraud, unfair competition, breach of fiduciary duty. *Id.*; Ky. Rev. Stat. Ann. § 365.892; *See Auto Channel*, 144 F.Supp.2d at 789 ("The Uniform Trade Secrets Act clearly states that the law replaces conflicting remedies for violations of a trade secret.") (internal quotations omitted). "KUTSA replaces other law relating to the misappropriation of trade secrets, *regardless* of whether the Plaintiffs demonstrate that the information at issue qualifies as a trade secret." *Auto Channel*, 144 F. Supp at 789 (citations omitted) (emphasis added).

Therefore, if all of Tech Com's claims arise out of misappropriation of its trade secrets, then KUTSA would likewise govern all the claims at issue regardless of whether Tech Com proves the existence of an actual trade secret. This Court will address each claim in turn to analyze whether KUTSA applies, except Count III, which is an action directly alleged under KUTSA by Tech Com. (Doc. # 1-1 ¶ 76). If KUTSA applies to a claim, then it will preempt that claim and this Court will analyze the preempted claims under KUTSA. *See Auto Channel*, 144 F.Supp.2d at 789.

### 1. *Count I – Injunctive Relief*

Tech Com's first claim asks this Court for injunctive relief. (Doc. # 1-1 ¶¶ 61-63). Tech Com avers that, if Defendants are not enjoined, that it will be irreparably harmed by destruction or conversion of its property, loss of business because of Defendants' actions disclosure of trade secrets, loss of confidential information, and economic loss. (*Id.*).

4

While Tech Com does not specifically address what company property is at risk in the Complaint, it makes clear in its Response that the property is the company iPad Estep allegedly possessed that contained trade secrets. (Doc. # 32 at 14-15). Accordingly, this claim largely relies upon the misappropriation of Tech Com's trade secrets—the remaining allegations in this claim also deal with the disclosure of trade secrets or confidential information. (*See* Doc # 1-1 ¶¶ 62-65). KUTSA preempts this claim. *See Auto Channel*, 144 F. Supp at 789.

### 2. Count II – Breach of Fiduciary Duty & Duty of Loyalty

Likewise, in Tech Com's second claim it alleges that Estep failed to act in good faith and unlawfully used Tech Com's business information for his own benefit. (Doc. # 1-1 ¶¶ 71-72). As the basis for this claim, Tech Com alleges that Estep "breached his fiduciary duties by misappropriating Tech Com's *confidential information* while still employed by Tech Com in violation of Kentucky law." (*Id.*) (emphasis added). Accordingly, KUTSA preempts claim. *Auto Channel*, 144 F. Supp at 789 (citing *Weins v. Sporleder*, 605 N.W.2d 488, 491-92 (S.D. 2000) (citing cases where "numerous courts have specifically found that tort claims such as fraud, unfair competition, and breach of fiduciary duty are preempted by the Uniform Trade Secret Act.")

### 3. Count IV – Unfair Competition

Tech Com's fourth claim alleges that Defendants compete with it for customers and that Defendants have engaged in unfair competition by "stealing and/or misappropriating Tech Com's *confidential and/or proprietary information* for the purpose of gaining an unfair [advantage] in competition with Tech Com for its customers." (Doc. # 1-1 ¶ 90) (emphasis added). The rest of the allegations also rely on "confidential and

trade secret information." (*Id.* ¶¶ 91-95). Again, Tech Com makes clear in its Response that "Estep injured its business by using the proprietary FPQ tool, to bid against Tech Com in competition for the same customers." (Doc. # 32 at 13). Thus, KUTSA applies to this claim as well. *Auto Channel*, 144 F. Supp at 789 (citations omitted).

    4.  **Count V – Tortious Interference**

  Count V of Tech Com's Complaint alleges that Defendants have "intentionally interfered and continue to interfere with the business relationship of Tech Com and its customers." (Doc. # 1-1 ¶ 101). Specifically, Defendants did so "by using the *misappropriated confidential and/or proprietary information* in bad faith and without justification in order to undercut Tech Com and entice away its customers." (*Id.*) (emphasis added). Even if that were not enough, Tech Com makes clear that "Estep retained the iPad that contained Tech Com's pricing information," and "Estep under bid Tech Com on new projects for Tech Com customers that Estep previously serviced as Tech Com's Director of Operations." (Doc. # 32 at 14). This claim undoubtedly relates to Defendants' alleged misappropriation of trade secrets and KUTSA preempts it.

    5.  **Counts VI, VII, and VIII**

  Tech Com's sixth claim alleges that "Defendants have intentionally and without authorization exercised dominion and control over Tech Com's *confidential trade secrets* and other proprietary information." (Doc. # 1-1 ¶ 109) (emphasis added). The Complaint goes on to allege that Defendants have "substantially interfered with and/or prevented Tech Com from obtaining its rightful benefit and use of such property." (*Id.* ¶ 110). This plainly is based upon Defendants' alleged misappropriation of trade secrets. Likewise, Count VII relies on the fact that "Estep was issued a company Apple iPad that was

preloaded with and had privileged access to confidential and/or proprietary information," and that "Estep *failed to return* said iPad . . . that *contained confidential trade secrets and other proprietary information*." (Doc. # 1-1 ¶¶ 114, 116) (emphasis added). Lastly, Count VIII alleges that as "a result of Defendants' theft of Tech Com's business . . . Defendants have been unjustly enriched at the expense of Tech Com." (*Id.* ¶ 120). While this claim does not specifically reference misappropriation, every other claim is based on Defendants' alleged misappropriation, so those actions must necessarily underlie the alleged unjust enrichment. In short, if all of Tech Com's claims rely on misappropriation, then Defendants' unjust enrichment would have to also rely on that same misappropriation. Because all these claims rely on the factual underpinnings of the misappropriation, they are preempted by KUTSA. *Auto Channel*, 144 F. Supp at 788.

    **C.**    **Kentucky Uniform Trade Secrets Act Analysis**

Since all the claims relevant to the Motion for Summary Judgment are preempted by KUTSA, this Court will analyze whether (1) Tech Com has proven that Defendants took information that constituted a trade secret and (2) whether Defendants misappropriated that trade secret information. *See* Ky. Rev. Stat. Ann § 365.880, *et seq.*; *Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 29 (6th Cir. 2011); *Van Winkle v. HM Ins. Grp., Inc.*, 72 F.Supp.3d 723, 737 (E.D. Ky. 2014). "A failure in either respect will result in dismissal of the claim as a matter of law." *Smart & Assocs., LLC v. Indep. Liquor (NZ) Ltd.*, 226 F.Supp.3d 828, 855 (W.D. Ky. 2016) (citing *Auto Channel*, 144 F.Supp.2d at 795).

### 1. Definition of a Trade Secret

Under Kentucky law, a trade secret is "information, including a formula, pattern, compilation, program, data, device, method, technique, or process," that (1) "derives independent economic value . . . from not being generally known to, and not being readily ascertainable . . . by other persons who can obtain economic value from its disclosure or use," and (2) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ky. Rev. Stat. Ann. §§ 365.880(4)(a)-(b); *Brake Parts,* 443 F. App'x at 29. Courts have looked at the following factors in deciding whether something is a trade secret:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and other involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Church Mut. Ins. Co. v. Smith*, No. 3:14-CV-749-JHM, 2017 WL 5987691, at *3 (W.D. Ky. Dec. 1, 2017) (citations omitted).

In its Complaint, Tech Com makes clear that it "considers its customer lists and customer data, including pricing information, as highly confidential, and it takes extensive measures to safeguard this data against theft." (Doc. # 1-1 ¶ 15). Other categories of information Tech Com alleges Estep had access to are its personnel database, employee compensation, pricing tools, company plans and strategies. (*Id.* ¶ 22).

As far as customer lists and data, Tech Com fails to produce an example of any such list in its Response. When asked during discovery to describe in detail the customer data that it considered highly confidential, Tech Com responded that Vice President

Dave Sharkey would distribute client lists before weekly conference calls that Estep attended. (Doc. # 27-6 at 6). However, Defendants produced an example of one of Mr. Sharkey's emails that is clearly labeled "Friday Conf. Agenda 5/17/19," and simply lists the names of clients and projects being worked on. (Doc. # 27-8). Instead of a client list, Tech Com was disseminating a meeting agenda to each person on the call via email, as evidenced by the body of Mr. Sharkey's email "Team, [a]ttached is today's agenda." (Doc. # 27-8 at 2).

Even assuming, for the sake of argument, that this qualifies as a customer list, courts have found that "lists of customers whose identities as purchasers of a given type of product may be obtained through such legitimate channels as telephone books, the internet, or by calling local businesses" do not constitute trade secrets. *See ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 714 (6th Cir. 2005). As the agenda merely lists customer names and general bullet points about the status of projects, it fails to qualify as a trade secret as Defendants could simply search the internet for the names of the companies. *Id.* at 715 (finding that customer information could simply be obtained by calling a shop and asking). Furthermore, Tech Com itself disseminates *more specific* information about its clients and projects on its own social media than on the meeting agendas. (Doc. # 27-9 at 2); *Smart & Assocs.*, 226 F. Supp. 3d at 855 ("A plaintiff who publishes or otherwise makes available information asserted to be a trade secret, thereby making it readily ascertainable to many people through proper means, will likewise fail to satisfy the two-part test under [KRS] § 365.880(4)."). Accordingly, the meeting agenda/customer list presented does not qualify as a trade secret.

Tech Com's pricing mechanism is a different story. Tech Com argues that the PWR contains "static percentages" within formulas in the Excel workbook to expedite the bidding and pricing process. (Doc. # 32-2 at 2-3). Tech Com further provides a few examples of the formulas contained within the PWR. (*Id.*). Defendants argue that the formulas are simple addition, multiplication, and division formulas to generate price quotes. (Doc. # 27-1 at 19). Tech Com also explains that the PWR "uses a range of simple and complex mathematical formulas . . . to derive relevant figures used internally for Tech Com, LLC." (Doc. # 32-2 at 2). Looking at the record in the light most favorable to Tech Com, the formulas in the PWR could be considered trade secrets as, at least the static percentages, "derive economic independent value" and are not "generally known." Ky. Rev. Stat. Ann. § 365.880(a). Tech Com alleges that the static percentages are based on "the experience and preference of those working for Tech Com, LLC," and were used to "gain a competitive advantage." (Doc. # 32-2 at 2-3). While the assertion that cell locking in Excel and password protection are adequate security measures "to maintain secrecy" under the statute is tenuous, the Court need not address that question because Tech Com has failed to prove that Defendants actually misappropriated any trade secrets. Ky. Rev. Stat. Ann. § 365.880(4)(b); *Van Winkle*, 72 F.Supp.3d. at 737 ("Regardless of whether these documents contained trade secrets, [d]efendants cannot establish that Van Winkle misappropriated them.").

### 2. *Trade Secret Misappropriation*

To prove misappropriation, Tech Com "must show that the trade secret was acquired by improper means, was disclosed improperly, or was used by someone without proper consent." *BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 274 F.Supp.2d 880, 890

10

(E.D. Ky. 2003), *aff'd,* 124 F. App'x 329 (6th Cir. 2005) (citing Ky. Rev. Stat. Ann. § 365.880); *Brake Parts,* 443 F. App'x at 29.

First, the trade secret was not acquired through improper means as Estep was privy to the information during his employment with Tech Com. (Doc. # 1-1 ¶ 22). As for the trade secret being disclosed improperly or used without consent, Tech Com asserts in its Response that Estep "used the information [on the iPad] to under bid Tech Com for projects with Tech Com's existing customers." (Doc. # 32 at 13). Tech Com provides no citations nor evidence to support this assertion. On the other hand, Defendants argue that the only proof Tech Com submits to show misappropriation is an email in which Defendants quote a company for services. (Docs. # 27-1 at 23 and 27-7). The email only shows a price quote with no indication of how that quote was ascertained nor what tools were used in the process, so Defendants are correct that this wholly fails to show any indication of misappropriation. (Doc. # 27-7).

Tech Com has not adequately demonstrated that Defendants have at all used its alleged trade secrets. Moreover, it is unclear whether Estep even relied upon the PWR while employed with Tech Com as it admits Estep was "often lax in his responsibilities to utilize and/or submit weekly the required PWR for each of his projects." (Doc. # 32 at 4). At best, Tech Com has demonstrated that Estep had *access* to the information via the iPad, but access does not equate to misappropriation.[1] *Smart & Assocs.*, 226 F.Supp.3d at 856 ("The mere possession of an otherwise protected trade secret without any use does not constitute misappropriation within the meaning of the [K]UTSA.")

---

[1] Even this fact is disputed, Defendants provide correspondence in which Estep informed Tech Com executives that he did not have the iPad in his possession. (Doc. # 35-2 at 3).

(citations omitted). As such, Tech Com has failed to meet its burden under KUTSA to establish misappropriation of its trade secrets.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED**:

(1) that Defendants' Motion for Summary Judgment on Counts I-VIII of Plaintiff's Complaint (Doc. # 27) is **GRANTED**; and

(2) that the parties shall file a **Joint Status Report within twenty (20) days** addressing the remaining claims which were not subject to Defendants' motion.

This 9th day of March, 2022.



Signed By:
*David L. Bunning*   DB
United States District Judge

K:\DATA\ORDERS\Ashland Civil\2020\20-89 MOO re MSJ.docx